Pages 1 - 24

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan Illston, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | **NO. CR 16-00227-SI** |
| | ) | |
| ALEXANDER VINNIK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

San Francisco, California
Friday, December 16, 2022

**TRANSCRIPT OF REMOTE VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:** (Via Zoom videoconference.)

For Plaintiff:

        STEPHANIE M. HINDS
        United States Attorney
        450 Golden Gate Avenue
        San Francisco, California  94102
      **BY:  CLAUDIA QUIROZ**
            **ASSISTANT UNITED STATES ATTORNEY**

        UNITED STATES DEPARTMENT OF JUSTICE
        Computer Crime and
        Intellectual Property Section
        1301 New York Avenue NW - Suite 600
        Washington, D.C. 20005
      **BY:  C. ALDEN PELKER**
            **ASSISTANT UNITED STATES ATTORNEY**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
          Official Reporter, CSR No. 12219

1    **APPEARANCES**:   (CONTINUED)

2    For Defendant:

3                                    OFFICE OF THE FEDERAL PUBLIC DEFENDER
                                     450 Golden Gate Avenue - Box 36106
                                     San Francisco, California 94102
4                            BY:  **DAVID W. RIZK**
                                 **ASSISTANT FEDERAL PUBLIC DEFENDER**
5
     Also Present:   Laura Mirozoyan, Russian Language Interpreter
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    <u>Friday - December 16, 2022</u>                          <u>11:02 a.m.</u>

2                      <u>P R O C E E D I N G S</u>

3                            ---o0o---

4        **THE CLERK:**  Now calling Criminal Matter 16-CR-227,

5    U.S.A. versus Alexander Vinnik.

6        Counsel, please state your appearances for the record

7    starting with the Government.

8        **MS. QUIROZ:**  Good morning, Your Honor.  Claudia Quiroz

9    and Alden Pelker on behalf of the United States.

10       **THE COURT:**  Good morning.

11       **MR. RIZK:**  Good morning, Your Honor.  David Rizk for

12   Alexander Vinnik.  He is present, in custody, from Santa Rita

13   Jail.  He waives his personal appearance, and he's assisted by

14   the Russian language interpreter.

15       **THE COURT:**  Good morning, Mr. Rizk.

16       Good morning, Mr. Vinnik.  Can you hear me okay?

17       **THE DEFENDANT:**  Good morning.  Yes.

18       **THE COURT:**  Thank you.

19       **THE INTERPRETER:**  And, Your Honor, Laura Mirozoyan,

20   Russian language interpreter, previously sworn.

21       **THE COURT:**  Good morning.  Thank you.

22       **THE INTERPRETER:**  Good morning.

23       **THE COURT:**  So this is a status conference.  I did

24   receive a statement from Mr. Rizk this morning.

25       Ms. Quiroz, have you had a chance to see that?

1          **MS. QUIROZ:**  Yes, Your Honor.  We were able to review

2      it.  And the Government would like to respond to that report

3      that the Defense filed last night, and actually clarify some of

4      representations made in the report.

5          I will cover the discovery issue, and my colleague Alden

6      Pelker will cover the issue of the protective order and

7      Count 1.

8          **THE COURT:**  Okay.

9          **MS. QUIROZ:**  So starting with the discovery -- and I

10     apologize, I have a little bit of a cold, so I hope you can

11     hear me okay.

12         **THE COURT:**  Okay.

13         **MS. QUIROZ:**  So starting with the discovery, Your

14     Honor, while the Government recognizes that there is discovery

15     pending in this case -- which I will expand on in a minute --

16     it has produced significant discovery -- it has produced

17     significantly more to the Defense than what is actually

18     represented in the report.

19         So in summary, the Government has made five productions.

20     The first production included financial and other records that

21     defense counsel specifically requested following Mr. Vinnik's

22     extradition to the United States and appearance in federal

23     court here for the purpose of ascertaining his financial

24     eligibility for appointment of counsel.  And this was done

25     before a protective order was negotiated in order to

1   expedite -- or before a protective order was put in place in

2   order to expedite the production.

3        Shortly before Mr. Vinnik's arraignment, as the Government

4   was processing the discovery in this case, it ran into some

5   substantial technical issues that, unfortunately, delayed the

6   process.  We were transparent with defense counsel about those

7   issues and have continued to be with him as well.

8        While trying to resolve those issues, my colleague

9   Ms. Pelker and I put together a reverse proffer on Mr. Vinnik,

10  which outlined the case, the evidence, and other relevant

11  information.  At the end of September, Mr. Vinnik and his

12  counsel met with the Government at the U.S. Attorney's Office.

13  He sat for an hour-long presentation, during which we laid out

14  the case and the evidence.  Defense counsel shortly --

15  including -- sorry -- our incriminating evidence, and we asked

16  follow-up questions.

17       Defense counsel requested the materials that we used for

18  that presentation after the meeting.  We promptly provided

19  that, which included a 61-page PowerPoint presentation which we

20  had created for the proffer.  And, of course -- not, of

21  course -- but a reverse proffer is not mentioned in defense

22  counsel's status report.

23       We spoke with defense counsel early on to flag and explain

24  exculpatory information.  And subsequent to that, is three

25  subsequent productions, one in November and two in December.

**PROCEEDINGS**

1   The November -- I'm sorry.  The December 2nd -- on

2   December 2nd, I met with Mr. Rizk.  He wanted to discuss a

3   number of issues.  And I had delivered a drive that contained

4   search warrant returns from a number of providers including

5   Apple, AOL, Google, Facebook, and Microsoft.

6       As defense counsel notes in the report, the letter, the

7   transmittal letter note stated that the drive contained over 29

8   gigabytes of data, when it actually contained 2.9 gigs.  That

9   was an honest mistake on my part.  But nonetheless, the data on

10   that drive is substantial and it far exceeds the 2,500 pages of

11   material the defense counsel claims that he has received.

12       And just the Google folder alone contains numerous MBox

13   files.  And MBox files are e-mail boxes saved in an e-mail

14   storage that basically lists an entire inbox messages in a

15   single text file.  But it actually contains thousands of files

16   and e-mails.  So I have not tabulated all the files myself, but

17   the paralegal at the U.S. Attorney's Office who has been

18   assisting us with the production has told me she estimates that

19   there's over 300,000 files in the production, which would be

20   e-mails.

21       So the discovery in this case is voluminous.  There have

22   been delays.  Again, we have been transparent with defense

23   counsel about the technical issues.  There are other issues

24   that have come up.  A lot of these documents are in different

25   languages, not just Russian.  So we're dealing with having to

**PROCEEDINGS**

1    translate.  A lot of these documents are also sensitive.

2    They're source information that we have to review every single

3    file.  We can't just wholesale turn things over.  We need to

4    review it.  We need make sure we're not turning things over

5    that are sensitive.

6        The protective order does provide for a sensitive

7    designation, but we also recognize that if we tag large swaths

8    of materials as sensitive, it's going to be more difficult for

9    Mr. Vinnik to review them.  So we're being very careful as to

10   what we designate as sensitive and what we don't.

11       Thankfully, we have sorted out the technical issues we

12   have faced in the past few months.  We're working on making a

13   sizeable production after the holidays.  And, again, like we

14   said, several terabytes of data are being processed now, and

15   things are in progress.  So we do -- we do anticipate making a

16   sizeable production after the holidays.

17       And with respect to Mr. Rizk's request that there be a

18   discovery schedule, you know, the Government does not believe

19   that that's appropriate or called for in this case and that

20   would be a step below discovery sanctions.  And given that

21   we've been working really hard to try to get this to him as

22   quickly as we can, trying to overcome a number of issues, and

23   being transparent with him and meeting with him, you know, and

24   discussing all these issues with him regularly throughout the

25   past several months, we just don't believe that's called for in

**PROCEEDINGS**

1    this case, and we will be prepared to make a production in

2    short order.

3         So unless there's anything I've missed, I'll let my

4    colleague address, otherwise that's the update on the

5    Government's discovery side, Your Honor.

6              **THE COURT:**  Okay.  Ms. Pelker?

7              **MS. PELKER:**  Sure, Your Honor.

8         Do you have any questions regarding the status of

9    discovery or would like to hear on the protective order issue?

10             **THE COURT:**  No.  But what I do see here on page 3 is

11   that what Mr. Rizk is requesting is A, B, C, and D, and he says

12   the Government has indicated that it believes it can meet the

13   Defense's proposed schedule, but maintains that no court

14   ordered deadline is necessary.

15        Is that about right?

16             **MS. PELKER:**  That's correct, Your Honor.  But I'll

17   refer that back to my colleague Ms. Quiroz.

18             **THE COURT:**  Is that right, Ms. Quiroz?

19             **MS. QUIROZ:**  Yes, Your Honor.  And, again, we've been

20   working with the agents, you know, to the extent, you know,

21   there are additional things that need to be processed and

22   obtained.  We do believe we're able to get this to Mr. Rizk.

23   Again, we've -- as he noted in the report, we requested a

24   four-terabyte drive that he has sent to the Secret Service in

25   Washington, D.C.  I don't know if they received it or not, but

**PROCEEDINGS**

1   that is a sizable production that he's going to receive.

2   So -- so, yes, Your Honor.  I mean, we believe that we are

3   able to meet this.  And, in fact, there are certain things that

4   we've agreed with defense counsel that he doesn't want to be

5   flooded with certain -- you know, some of the images, I think,

6   you know -- excluding the software NetConnect servers.

7   So just an actual schedule is not -- I just don't think

8   it's warranted, Your Honor.  And it's not the practice -- at

9   least not in, you know, the cases I've worked on in my office.

10   But we are -- we have been working very hard to try to get this

11   to the Defense.

12          THE COURT:  All right.

13          MS. QUIROZ:  And, again, as we noted, it's more

14   voluminous than it's actually represented in the report.

15          THE COURT:  I see from the papers that Mr. Vinnik has

16   been in custody since July 2017.  Is that right?

17          MR. RIZK:  Overseas, yeah.

18   He was arrested in July 2017.  And then he was in

19   extradition proceedings in a criminal case in France, and,

20   you know, the United States -- he was under an extradition

21   request from the United States since that time.

22          MS. QUIROZ:  He had a separate sentence, Your Honor,

23   in France.  He was tried and had a -- served a separate

24   sentence.

25          THE COURT:  Was that related to these charges?

**PROCEEDINGS**

1          MS. QUIROZ:  Yes, Your Honor.

2          THE COURT:  Was he in custody that whole -- has he

3   been in custody since 2017?

4          MR. RIZK:  Yes.

5          MS. QUIROZ:  Yes.

6          MS. PELKER:  One point of clarification, Your Honor.

7   It is -- they were separate charges and separate offenses that

8   he was tried for in France.

9          THE COURT:  Arising out of these kinds of things that

10  we're talking about here?

11         MS. PELKER:  It would likely be related conduct, but

12  not the same conduct, yes.

13         THE COURT:  Okay.

14         MR. RIZK:  Can I just make two comments, Your Honor,

15  in response?

16         THE COURT:  Sure.

17         MR. RIZK:  My concern and the reason for the request

18  is we have -- the Government and I have a good relationship.

19  We have been talking about all the issues.  That's not the --

20  that's not the problem.  I appreciate their transparency about

21  it.

22         The problem is, the discovery hasn't been delivered.  And

23  so even on multiple occasions when I've been told "You're going

24  to get a discovery, you know, this week," then it turns out

25  that several weeks pass before I actually get the discovery.

1      And when it comes down to it -- we can quibble about the

2   details, but what I have right now is approximately

3   10 gigabytes.  10 gigabytes is not a lot of discovery.  That's

4   one one-hundredth of a single terabyte.  So if there's -- if

5   this is a five-terabyte case, I have one five-hundredth of the

6   data that I ultimately need, after four and a half months of

7   waiting.  And that's why I'm requesting --

8          THE COURT:  I think I understand the situation.  And I

9   am expressing -- no disrespect to anybody.  I realize that

10  we -- we have a collegial sort of program in this district

11  between defense counsel and the Government, and that's one of

12  most valuable things we have.  That's one of the reasons that

13  both of our offices, our prosecution office and our public

14  defender office, are so excellent is because they're able to do

15  that.  That benefits their clients and it benefits the system.

16      I think it will focus attention, and perhaps ease the

17  Government's burden with respect to any other organizations it

18  needs to deal with, to have a goal in mind.  So I'm going to

19  say within 60 days the Government should do these things, the

20  A, B, C, and D.  And that's not based on any misbehavior, it's

21  just an order that those things are produced.  And if, for some

22  reason they can't be, first, tell Mr. Rizk, and then, if

23  there's an issue, you can tell me.

24      But that will be -- so what is 60 days?  January,

25  February, say February --

PROCEEDINGS

1          THE CLERK:  14th, 2023.

2          THE COURT:  Oh, February 14th.  By February 14th,

3    2023.

4          MR. RIZK:  Maybe we could make it February 17th,

5    because we're going to come -- we're going to request to return

6    for another status conference on that date.

7          THE COURT:  On the 17th?

8          MR. RIZK:  Yes.  Yeah.

9          THE COURT:  Okay.  17th.

10     And now the protective order?

11          MS. PELKER:  Yes, Your Honor.

12     So the protective order that's currently in place in this

13     case doesn't restrict Mr. Vinnik's use of the discoverable

14     information to defend in the criminal case.  What we understand

15     Mr. Rizk's proposal is is to amend the protective order to

16     essentially remove the constraint that his use of the

17     information that we're producing in discovery be connected to

18     Mr. Vinnik's criminal case, which we don't think is an

19     appropriate amendment.

20     As far as the specific request regarding the engagement

21     with the State Department, I do want to clear up a few things

22     for the record and confusion regarding Mr. Vinnik's current

23     engagement.

24     So because Mr. Vinnik's case is still a pending and active

25     criminal matter, and because Mr. Vinnik is a represented party,

 1  all communications between the U.S. government and Mr. Vinnik

 2  regarding his case, including any disposition, are going to go

 3  through Mr. Vinnik's counsel as well as the Department of

 4  Justice.  And the Department of Justice has spoken with the

 5  State Department and the Special Envoy's Office, and everyone

 6  is in full agreement on that point.

 7       The State Department has emphasized to DOJ that they have

 8  no interest in receiving discovery from Mr. Vinnik, and they

 9  have had told Mr. Rizk that he should communicate through the

10  Department of Justice if he has anything he wants to say or

11  relate to the State Department.

12       We've repeatedly told Mr. Rizk that if he'd like to make

13  an actual request, if he'd like to relay information, he can do

14  so through us, and we'll pass that along to State Department.

15  And that includes if he wants to send a letter to State

16  Department making his case for why Mr. Vinnik is an appropriate

17  candidate for a prisoner swap, regardless of DOJ's position on

18  that, we have told Mr. Rizk we will pass that along to State

19  Department.

20       The concern really is in making sure that while this

21  criminal case is pending that the communications about a

22  resolution are with Mr. Vinnik's counsel and the Department of

23  Justice.

24       We understand that Mr. Vinnik --

25           **THE COURT:**  Wait a second.  Say that last sentence

1   certain.  Your real concern is what?

2          MS. PELKER:  That while Mr. Vinnik's criminal case is

3   pending --

4          THE COURT:  Yeah.

5          MS. PELKER:  That it's an active criminal matter here,

6   that engagements and conversations about the disposition

7   involve Mr. Vinnik's counsel as well as the Department of

8   Justice.

9          THE COURT:  Well, is that even a question?  I mean,

10  why is that a problem?

11         MR. RIZK:  Here's the issue:  Mr. Vinnik and his

12  lawyers have the right to advocate generally for him to be

13  included in a prisoner swap.

14     The Department of Justice is not the primary decider; it's

15  the president.  And he got -- what I'm told, as I understand,

16  there's many agencies involved.  But I think the State

17  Department is the lead agency, and that's the real audience

18  here.  The line prosecutors are not purporting to be the main

19  audience here.

20     But DOJ has different priorities than the State Department

21  and they want to be included in all of communications; but they

22  concede that there's no legal rule or regulation that requires

23  me to speak only to them about this case.  And what we're

24  talking about is a broader issue, which is:  It's the

25  Government's responsibility to justify restrictions on the use

**PROCEEDINGS**

1    of discovery.  And I objected to these provisions in the PO,

2    but before this was -- a prisoner swap was even an issue.

3         And the basic issue is that we're talking about

4    information.  Not information that's PII or it concerns witness

5    safety or something like that.  It's all discovery in the case

6    which I'm restricted for using in any other purpose, including

7    writing a letter to the State Department that's -- that's,

8    you know, copied to DOJ.

9         And so what I'm asking for is to use undesignated

10   information, information that the Government cannot justify and

11   has not designated as requiring any sealing whatsoever and

12   using that information to advocate for a prisoner swap.

13        And it's interesting that DOJ says, you know, that it's --

14   it's all related to the case.  Well, if it's all related to the

15   case then I think there's a very strong argument that what I'm

16   doing is defending the case within the parameters of the

17   protective order.

18        But I'm -- in an abundance of caution and to be completely

19   transparent and because I'm an officer of the court, I'm

20   seeking clarification on this that I should be able to use

21   information that can be publicly disclosed, without any sealing

22   requirement, in open court, and I should be able to use it in

23   other public domains, including talking to government agencies

24   that might impact Mr. Vinnik's case, and allow him to avoid

25   serving -- being forced to serve a sentence in this case.

PROCEEDINGS

1        That's my position.  It's not -- it's not really about,

2   you know, who's copied on the communications advocating a

3   prisoner swap here.

4        And I, you know --

5        THE COURT:  Explain to me what you mean by designated

6   and undesignated documents.

7        MR. RIZK:  Sure.

8        So the protective order has one designation in it for

9   sensitive information.  And so far, very little to no

10  information has -- except for the first production, which we --

11  which we agreed some protections would inure to -- about

12  Mr. Vinnik's financial eligibility for appointment.  Other than

13  that, very little to no information in discovery has been

14  designated as sensitive.

15       But the protective order is more restrictive than that.

16  It says that all discovery -- all discovery can only be used to

17  defend this case and for no other purposes and in connection

18  with no other proceeding; that's irrespective of whether it's

19  designated.  The Government is not saying that all discovery

20  has some -- disclosure of all discovery would cause it some

21  injury.  But it's instead saying that I can't use it for any

22  other purpose.

23       And the standard, the legal standard which I set out in

24  the statement is that there has to be good cause for

25  restricting the Defense from using discovery in whatever way it

**PROCEEDINGS**

1     likes.   There has -- the Government has to articulate a

2     specific injury and it's logically impossible for them to

3     articulate an injury when they -- when they concede that it can

4     be used in open public court, what injury could flow.

5          And by the way --

6          **THE COURT:**  Ms. Pelker, what would be the good cause

7     to prohibit Mr. Vinnik from sharing the undesignated

8     information with the State Department?

9          **MS. PELKER:**  So to be clear, Your Honor, we've offered

10    to Mr. Rizk, if he can note what specifically he'd like to

11    share with State Department or explain to us what it is that he

12    wants to share, that we're happy to consider that and take it

13    under advisement.  And it may be --

14         **THE COURT:**  Wait.  That assumes that you have to

15    approve it.

16        The question is:  What good cause is there to withhold it?

17         **MS. PELKER:**  Well, first and foremost, State

18    Department is repeatedly saying they don't want this, they have

19    no interest in it whatsoever.  So it's not clear how it

20    actually advances anything pertaining to Mr. Vinnik.

21         **THE COURT:**  Well, Mr. Rizk, that's the right to --

22         **MS. PELKER:**  For what it's worth, Mr. Vinnik's defense

23    counsel has repeatedly attempted to reach out to State

24    Department and they've repeatedly told them that he needs to go

25    back through the Department of Justice.

**PROCEEDINGS**

1    As far as the general restriction regarding a constraint

2    on discovery being used in the criminal case, I think that to

3    the extent that Mr. Rizk is framing this as related to

4    Mr. Vinnik's criminal matter, in defense -- we're happy to take

5    that under advisement and consider it, that's the first

6    connection that we've heard that raised here today.

7    As far as the general restriction and parameters regarding

8    discovery that we're providing in a criminal case being,

9    quote/unquote, restricted for use in that criminal case, we

10   don't view that as any actual restriction on the Defense's use

11   of the information for what it's intended for, which is the

12   zealous advocacy and defense of the defendant in the criminal

13   matter.

14   That's very different than taking all of the discovery

15   that we're producing, which will end up being terabytes and

16   terabytes and, with no restriction whatsoever, allowing it to,

17   say, be published in bulk on the Internet, on a blog, put out

18   there.  Which I understand -- I mean, I recognize that Mr. Rizk

19   is not looking to do that, and we've engaged with Mr. Rizk on

20   our justifications and our concerns that gave rise to this

21   particular provision.

22   But we've also been very judicious in what we have

23   designated as sensitive, recognizing that it does complicate

24   concerns for Mr. Vinnik in reviewing the discovery while he's

25   incarcerated.  And that if the entire restriction on use of the

**PROCEEDINGS**

1  discovery with a requirement that it be connected to the

2  criminal case be lifted allowing for broad publication of all

3  of our discovery in bulk on the Internet, that may have to

4  revisit what the appropriate restrictions or parameters would

5  be; again, understanding that that's not Mr. Rizk's intention

6  here, in this case.

7      **THE COURT:**  Okay.  So we're talking about a lot of

8  things that aren't part of what's going on now.

9      Mr. Rizk, if I tell you that the protective order could be

10 either -- it either can be read now to provide, or could be

11 amended to provide that you could share such undesignated

12 documents with the State Department as are necessary to forward

13 his request to them concerning the prisoner swap, would that be

14 enough for you?

15     **MR. RIZK:**  It wouldn't.  I would move to strike the

16 entire restriction because I haven't heard any articulated good

17 cause for it.

18     And, by the way, there is no symmetrical restriction on

19 the Government's use of discovery.  And so when Mr. Vinnik was

20 extradited, the Government publicized the superseding

21 indictment, put out a press release that was the culmination of

22 their entire investigation and all the discovery, and so when

23 it suits their purposes, they are able to use discovery for

24 whatever purpose they like.  And when it comes -- and when it

25 comes to me, they want me to be under this gag order.

PROCEEDINGS

1    **THE COURT:**  Did you stipulate to the protective order?

2    **MR. RIZK:**  I did, but under reservation of objection

3    to this issue.  In fact, I said I'll stipulate it -- stipulate

4    to it because I want to get the discovery quickly, which didn't

5    happen, but I maintain my objections.  And if I have to, I'll

6    come back to litigate this issue to avoid delaying discovery.

7    So here we find ourselves.

8    **THE COURT:**  Okay.  Here we find ourselves.

9    Well, I'll submit it, and what I'm going to do is add a

10   sentence there that says that you're not precluded by this

11   protective order from sharing non- -- undesignated materials

12   with the United States State Department --

13   **MR. RIZK:**  I appreciate that, Your Honor, but --

14   **THE COURT:**  -- in connection with your request for a

15   prisoner swap.

16   **MR. RIZK:**  -- I care about the broader restriction and

17   I'm going to move to strike it, just so you're aware.

18   **THE COURT:**  Well, that's up to you -- that's up to

19   you.

20   **MR. RIZK:**  Okay.

21   **THE COURT:**  And the third thing is Count 1.  Is it

22   correct that Count 1 was -- will be dismissed latter?

23   **MS. PELKER:**  Yes, Your Honor.

24   And the Government apologizes.  We simply did not realize,

25   when Mr. Vinnik was first arraigned, that he was not extradited

1  on Count 1, but was extradited on all of the other counts.

2  As we explained to Mr. Rizk, while it's not our intention

3  to proceed to trial on that count, Mr. Vinnik is not

4  essentially legally present for the purpose of that count in

5  the United States, but that we wait to dismiss that count in

6  the event that -- we understand it's unlikely -- but that if

7  Mr. Vinnik was released and absconded and later apprehended,

8  that that restriction tied to the extradition would no longer

9  apply.  But the count will be dismissed later, with culmination

10  of the case.

11  **THE COURT:**  Okay.  There are a lot of what-ifs that

12  are being tossed in, but I -- they are not presently issues

13  before me.

14  All right.  Well, I will do, as I have suggested, on

15  those -- the two specific things what -- I'm very concerned

16  about the prospect of pretrial detention for what's now

17  five years, working on six years.

18  **MS. PELKER:**  I do want to be clear, Your Honor, that

19  that involved a trial in France, a conviction in France, and

20  serving a sentence in France for his conviction in France.

21  **THE COURT:**  I realize that and that's probably why

22  it's not unconstitutional.  Still, it's a long time.

23  So what is your next plan?  Do we have a trial date?

24  **MR. RIZK:**  No, because I don't have substantial

25  completion of discovery, and I just can't make any real

**PROCEEDINGS**

1  decision.

2          **THE COURT:**  Okay.  So did you say you want a status on

3  February 17th of next near?

4          **MR. RIZK:**  I did, Your Honor.  Thank you.

5          **THE COURT:**  That's what the Government wants as well?

6          **MS. PELKER:**  That's correct, Your Honor.  We've

7  conferred with defense counsel and hope to come back and either

8  have a plan for a resolution or set a trial date.

9          **THE COURT:**  All right.  So we'll come back on

10  February 17th.

11          **THE CLERK:**  Your Honor?  I'm sorry.

12          **THE COURT:**  Yes.

13          **THE CLERK:**  Our Santa Rita date would next be either

14  February 14th or February 28th, with the new schedule released.

15          **THE COURT:**  I see.

16      Which would you prefer?

17          **MS. PELKER:**  February 14th, if that works for the

18  Defense.

19          **MR. RIZK:**  Yes, it does.

20          **THE COURT:**  Okay.  Good.  Well, that -- I like that

21  date better anyway.  So that we'll come back on February 14th

22  at 11:00.

23      What about the time between now and February 14th,

24  Mr. Rizk?

25          **MR. RIZK:**  With reluctance, we agree to exclude it for

1   effective preparation.

2        **THE COURT:**  I do find that it's appropriate to exclude

3   that time so that counsel can be fully prepared and effectively

4   represent his client.

5        And, Ms. Pelker or Ms. Quiroz, if one of you would get me

6   a written order to that effect, I'll sign it.  We'll come back

7   on that day and that will also be the deadline for the

8   discovery what that discussed earlier.

9        Is there anything else for today?

10        **MR. RIZK:**  Can I make one last request regarding

11   discovery?

12        I've already discussed this with the AUSAs, but I'd like

13   to reiterate the request, which is:  If there are English

14   interpretations or translations of Russian statements that are

15   already in discovery, and the English translations are in the

16   possession of the prosecution team -- I'm not asking for new

17   translations, but existing ones -- I'd like those turned over

18   by the same deadline.

19        **THE COURT:**  Is there any problem with that?

20        **MS. PELKER:**  Your Honor, we will turn over anything

21   that we have or -- we will endeavor to identify any of the

22   translations.

23        My only hesitation is that it's possible that buried in

24   old e-mails that agents may have e-mailed, with ad hoc English

25   translations, that we may not be able to readily flag or

1  identify.  But we'll endeavor to produce any actual, documented

2  English translations that we have available.

3         **MR. RIZK:**  That's fine.  We can meet and confer about

4  things like e-mails.

5         **THE COURT:**  Okay.

6         **MR. RIZK:**  If they're not done by the deadline, that's

7  okay.

8         **THE COURT:**  All right.  Well, that will be part of it

9  then.

10        **MR. RIZK:**  Thank you.

11        **THE COURT:**  Anything else?

12        **MR. RIZK:**  No, Your Honor.

13        **THE COURT:**  Okay.  Well, I hope everybody has a

14  peaceful holiday season.

15     You too, Mr. Vinnik.  We'll be back in February, so

16  between now and then, I hope you have a peaceful holiday

17  season.

18        **MR. RIZK:**  Thank you, Your Honor.

19        **THE COURT:**  Thank you.

20        **MS. QUIROZ:**  Thank you, Your Honor.

21        **MS. PELKER:**  Thank you, Your Honor.

22        **THE CLERK:**  That concludes our unsealed criminal

23  matter.

24              (Proceedings adjourned at 11:33 a.m.)

25                        ---o0o---

## CERTIFICATE OF REPORTER

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Sunday, January 8, 2023


_____
  Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
       Official Reporter, U.S. District Court