ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

KATHERINE L. WAWRZYNIAK (CABN 252751)
Chief, Criminal Division

CLAUDIA QUIROZ (CABN 254419)
KATHERINE LLOYD-LOVETT (CABN 276256)
Assistant United States Attorneys
C. ALDEN PELKER (MD)
Trial Attorney
Computer Crime & Intellectual Property Section
United States Department of Justice

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7428
    FAX: (415) 436-7234
    claudia.quiroz@usdoj.gov
    katherine.lloyd-lovett@usdoj.gov
    catherine.pelker@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 16-00227 SI |
| Plaintiff, | **UNITED STATES' OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER** |
| v. | |
| ALEXANDER VINNIK, | |
| Defendant. | |

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

I

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................................1

**FACTUAL SUMMARY AND PROCEDURAL HISTORY**...............................................2

    A.  Factual Background ...................................................................................................2

    B.  Relevant Procedural History .....................................................................................3

**ARGUMENT**......................................................................................................................4

    A.  Protective Order Terms Are Necessary to Protect Discovery Materials .........................4

    B.  Vinnik's Characterization of the Protective Order's Restrictions Is Exaggerated and Misleading..............................................................................................................7

    C.  There is Good Cause for the Existing Terms of the Protective Order ............................9

    D.  Advocating for a Prisoner Swap Is Not Part of the "Defense of This Case" Within the Meaning of the Protective Order........................................................................10

    E.  The Public Does Not Have a Right to Access to the Discovery Materials................111

    F.  Vinnik Has No Standing to Bring First Amendment or Right to Access Claims.........13

**CONCLUSION** ................................................................................................................14

# TABLE OF AUTHORITIES

### Federal Cases

*Accord Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1316 (11th Cir. 2001) ...... 8

*Alderman v. United States*, 394 U.S. 165 (1969) .................................................................................. 5

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d at 1137-38 .................................................................. 6

*Houchins v. KQED, Inc.*, 438 U.S. 1 (1978) ........................................................................................ 11

*IMS Health, Inc. v. Ayotte*, 550 F.3d 42 (1st Cir. 2008) ........................................................................ 13

*In re Terrorist Attacks on September 11*, 454 F. Supp. 2d 220 (S.D.N.Y. 2006) .................................... 5

*L.A. Police Dep't v. United Reported Publ'g Co.*, 528 U.S. 32, 40, (1999) ........................................... 11

*Powers v. Ohio*, 499 U.S. 400 (1991) .................................................................................................. 13

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 36 (1984) ................................................................. 11

*Singleton v. Wulff*, 428 U.S. 106 (1976) ........................................................................................ 13, 14

*United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir. 1995) .................................................................. 12

*United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ................................................... 8, 11

*United States v. Blagojevich*, 612 F.3d 558, 562 (7th Cir. 2010) .......................................................... 11

*United States v. Carpenter, No. 2:14-cr-309-GEB*, 2018 U.S. Dist. (E.D.Cal. Aug. 6, 2018) ............... 12

*United States v. Fraijo, No. CR-20-00248-001-TUC-JCH*, 2022 WL 1018385(D. Az. Apr. 5, 2022) ..... 5

*United States v. Hickey*, 185 F.3d 1064 (9th Cir. 1999) ....................................................................... 13

*United States v. John Francis Porter*, 3:22-cr-00270-WHO, Dkt. No. 58 ............................................. 8

*United States v. Loughner*, 807 F. Supp. 2d 828, 834 (D. Ariz. 2011) ................................................. 11

*United States v. Karlsson*, 3:19-cr-340-CRB, Dkt. No. 37 ..................................................................... 7

*United States v. Kimberly Dominguez and Erick Dominguez*, 19-cr-591-HSG, Dkt. 13 ....................... 8

*United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) ............................................................... 8, 11

*United States v. Manish Lachwani*, 3:21-cr-00353-CRB, Dkt. 27 ........................................................ 8

*United States v. Nashatka and Gunton*, 3:19-cr-00372-EMC, Dkt. No. 6 ............................................ 8

*United States v. Ryan Mark Ginster*, 3:19-cr-340-CRB, Dkt. No. 37 .................................................... 7

*United States v. Thomas Henderson et al.*, No. 19-cr-00376-RS ........................................................... 8

**Federal Rules**

Fed. R. Civ. P. 26 ............................................................................................................................ 11
Fed. R. Crim. Proc. 16 ........................................................................................................... 2, 3, 4, 5
Fed. R. Evid. 16 ............................................................................................................................. 11

# INTRODUCTION

On September 26, 2022, this Court entered a Protective Order governing the discovery in this case. That Protective Order was tailored to ensure the defense had the ability to use the discovery material as needed, but included the common requirement that the use of the discovery material relate to the defense of the criminal case. Pursuant to that Protective Order, the government has produced voluminous discovery, including significant financial records, images of electronic devices, contents of numerous email accounts, and other communications and information pertaining to Defendant Alexander Vinnik as well as uncharged third-parties, potential witnesses, and co-conspirators. Vinnik now seeks a nullification of the Protective Order entered by this Court, arguing that he should be permitted to share the discovery and discuss the case with "anyone who is willing to listen," including the "the news media, and the public itself." Dkt. No. 59 at 11.

In support of his motion, Vinnik makes a series of inaccurate and misleading arguments about the Protective Order's scope and presents an imprecise interpretation of existing case law on the public right of access doctrine as it pertains to this case. Vinnik also makes several factual assertions throughout his motion that are simply not correct and which, along with the legal inaccuracies set forth therein, should be rejected by the Court.[1]

First, Vinnik incorrectly characterizes the Protective Order as an aberration. The Protective Order in this case was tailored to the specific circumstances of this complex matter, yet largely parallels language used in prior protective orders in this district and others.

Second, Vinnik wrongly argues that a common restriction on using discovery information for purposes unrelated to the defense of the criminal case is somehow the equivalent of a gag order that serves no practicable or justifiable purpose. In truth, nothing about the Protective Order prevents Vinnik from speaking with his family or seeking religious counseling from his priest. Similarly, nothing in the Protective Order prevents defense counsel from advocating for a prisoner swap for his client—which he has done from the outset. Indeed, at Vinnik's request, the Court already modified the Protective Order

---

[1] Vinnik also makes a series of misstatements about the government's activities and the state of the French proceedings. The government disputes those characterizations, which are entirely irrelevant to the instant dispute.

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

1

to allow him to provide materials directly to the United States Department of State so that he could advocate for such a prisoner swap. Vinnik's proposed amendment to the Protective Order would dispense with all the protections afforded to the discovery material in this case, and which various judges in this district have repeatedly approved.

Third, Vinnik erroneously claims that there is a constitutional and common law right of public access to the discovery produced by the government in this case. However, the United States Supreme Court has long held that there is no common law or First Amendment public right of access to discovery information.

Fourth, Vinnik asserts that the existing Protective Order places no restrictions on his ability to file any discovery material that is not designated as sensitive in the public docket—an interesting proclamation, given his diametrically opposed argument that he is "gagged" by the Protective Order. He then claims that once filed, qualified common law and constitutional rights of access attach to the discovery materials. This manufactured line of reasoning necessarily fails. Documents collected during discovery are not judicial records, and merely filing a paper or document with the court is insufficient to render that paper a judicial document subject to the common law right of public access. In any event, Vinnik has no standing to bring such right to access claims because he is not a member of the public whose only interest in the litigation is access to court documents.

In sum, Vinnik's motion has no merit. There was, and there remains, good cause for the Protective Order. *See* Fed. R. Crim. Proc. 16(d)(1). Vinnik's exaggerated claims about the restrictive nature of the Protective Order lack grounding in existing case law. The Court should deny the motion.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

### A.     Factual Background

Alexander Vinnik is pending trial in this district for charges relating to his operation of BTC-e, a muti-billion-dollar money laundering platform, which Vinnik and his co-conspirators designed to intentionally promote and facilitate cybercrimes on a massive scale. As the "go to" virtual currency exchange for cybercriminals, Vinnik and his co-conspirators used BTC-e to launder billions in criminal proceeds from purveyors of ransomware, dark-web child-pornography sites, and narcotics marketplaces

such as Silk Road and Alpha Bay, as well as the proceeds of human trafficking, and hundreds of millions of dollars stolen from U.S. victims. The Superseding Indictment generally alleges that Vinnik is a sophisticated money launderer and cybercriminal who, prior to his arrest, operated an intricate network of shell companies. He intentionally placed assets in jurisdictions where it would be difficult for Western countries to restrain them and moved hundreds of millions of dollars through these accounts. In addition, Vinnik mastered the use of aliases, assuming the identity of several individuals and presenting himself as them. This helped him to operate BTC-e for years with impunity.[2]

### B. Relevant Procedural History

On September 26, 2022, the Court entered a Protective Order for the discovery in this case following a series of negotiations and discussions between the parties to ensure that sufficient protections were in place given the complexity of the case and the sensitive nature of the discovery materials. *See* Dkt. No. 29. Paragraph two of the Protective Order states the following: "All materials provided by the United States in preparation for, or in connection with, any stage of this case (collectively, 'the materials') may be used by the defendant and defense counsel *solely in connection with the defense of this case, and for no other purpose, and in connection with no other proceeding*, without further order of this Court." *Id.* ¶ 2 (emphasis added). Paragraph three further provides in relevant part as follows:

> Neither the defendant nor any member of the Defense Team shall provide any discovery material produced by the government—whether or not the material constitutes or contains Sensitive Information within the meaning of this Order—to any third party (i.e., any person who is not a member of the Defense Team) or make any public disclosure of the same, other than in a court filing, without the government's express written permission or further order of this Court, except that the Defense Team may show discovery materials produced by the government to witnesses in the course of preparing a defense for trial or any related proceedings in this case, but only if (i) the witness, by reason of their participation in the underlying events or conduct, would have seen or had reason to know such information, or (ii) it is otherwise relevant to the defense of the case that the Defense Team discuss with or show the witness the materials.

*Id.* ¶ 3.

---

[2] Given the expansive nature of Vinnik's criminal activities, the large amounts of money laundered, and the length and sophistication of BTC-e's operations, this is a complex case with voluminous and sensitive discovery.

On December 15, 2022, one day before a scheduled status hearing, Vinnik filed a status report in which he stated his intent to move to amend the Protective Order "for the purpose of advocating Mr. Vinnik's inclusion" in a prisoner swap with Russia.  Dkt. No. 38 at 3-4.  Vinnik's counsel raised the issue of his intended modification with the Court at the status hearing the next day.  After some discussion, the Court took Vinnik's request for modification of the Protective Order under submission and provided a tentative ruling on the matter.[3]  *See* Dkt. No. 40 (Criminal Minutes) at 1.

On December 16, 2022, in response to Vinnik's request, the Court issued an order amending the Protective Order, stating as follows: "For the reasons discussed at the December 16, 2022 status conference, the Court hereby AMENDS the protective order as follows: defendant may share undesignated material with the United States State Department."  Dkt. No. 39.  In so doing, the Court allowed defense counsel the flexibility to provide discovery materials to the United States State Department so that he could advocate for a prisoner swap for his client.

On May 19, 2023, Vinnik filed the pending motion to amend the Protective Order, in which he argues that the Protective Order is not the norm in this district and the equivalent of a gag order that serves no practicable or justifiable purpose.  *See* Defendant's Motion to Amend Protective Order ("Mot."), Dkt. No. 59 at 2, 3, 10-13.  He also argues that there is a constitutional and common law right of access to the discovery produced by the government in this case.  *Id.* at 9.  Vinnik filed a proposed Amended Protective Order along with his motion, in which he proposes to remove paragraphs two and three of the existing Protective Order in their entirety.  *See* Dkt. No. 61.

## ARGUMENT

### A. Protective Order Terms Are Necessary to Protect Discovery Materials

Rule 16(d)(1)—captioned "Regulating Discovery"—provides broad authority for the Court to deny, restrict, or otherwise defer discovery or inspection of documents, or grant other appropriate relief, upon a showing of good cause.  Fed. R. Crim. P. 16(d)(1); *see* 2 Charles Alan WRIGHT & PETER J. HENNING, FEDERAL PRACTICE & PROCEDURE § 262 (4th ed. 2009) ("The discretion provided to the trial

---

[3] At the hearing, Vinnik's counsel stated that "he would move to strike if the tentative [was] adopted." *Id.*

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

court by Rule 16(d)(1) is vast."). The Supreme Court has recognized that trial courts "can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969). Courts have approved protective orders to protect the safety of witnesses and others, to avoid the danger of perjury, to protect national security or businesses from economic reprisal, and in cases of voluminous discovery where redaction is impractical. *See* WRIGHT & HENNING at § 262 (gathering cases).

In this case, there was, and remains, ample good cause for the Protective Order. The discovery in this case encompasses a large volume of records, including detailed financial records tied to Vinnik and others, various communications, and records tied to multiple law enforcement investigations. The Protective Order in this case was crafted to ensure that Vinnik had access to the discovery materials in custody, while providing the necessary protections. *See, e.g., United States v. Fraijo*, No. CR-20-00248-001-TUC-JCH, 2022 WL 1018385, at *1 (D. Az. Apr. 5, 2022) (finding good cause for protective order for voluminous cellphone metadata to "safeguard identified personal information and expedite the discovery process"). *See also In re Terrorist Attacks on September 11*, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) ("In cases of unusual scope and complexity . . . broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause."). The Protective Order applies basic protections to the discovery productions generally, and heightened protections for the information meeting the specific criteria set forth in the Protective Order for as "sensitive."

The only restriction on the vast majority of the documents produced in discovery is that they must be used *in the defense of the criminal case* and cannot be shared with people who are not involved in the defense of the criminal case. The Protective Order thus affords the defense broad latitude to use the discovery for its intended purpose, and as Rule 16 envisions: the defense of the criminal case. The restriction that the materials must be used *in the defense of the criminal case* is necessary and appropriate, insofar as it prevents the unnecessary publication of information pertaining to uncharged third-parties, co-conspirators, and potential witnesses. Rule 16, like its civil counterpart in Federal Rule

of Civil Procedure 26(c), recognizes that restrictions are properly placed on litigants' use of documents they happen to receive through discovery.  *See* Fed. R. Evid. 16(d); Fed. R. Civ. P. 26(c) (authorizing courts to issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").  The defense's proposal would dispense with even that baseline protection and permit the defense to share nearly any document from the voluminous discovery—including communications of uncharged third-parties, information that could be used to identify witnesses and co-conspirators, and information related to other law enforcement investigations—for any purpose, with any individual, with no connection to the criminal case.  There is good cause to ensure the Protective Order protects against such a result.

The government has been conservative and judicious in its designation of materials as sensitive in order to facilitate Vinnik's review of the discovery materials while he is in custody.  Indeed, the Protective Order is designed to allow Vinnik maximum flexibility to review non-sensitive discovery and prepare for trial, and it narrowly defines "sensitive" materials to apply to a specific category of records needing especially heightened protections.  The government relied on the provisions of the Protective Order during the process of assigning sensitive categorizations to the materials.  *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d at 1137-38 ("The central concern in determining whether access should be granted to documents sealed under a protective order is whether that order was relied upon in the decision to produce documents.").

Thus, there are discovery materials in the government's production that—although they do not bear a heightened "sensitive" designation—are not appropriate for public consumption.  For example, as set forth above, the discovery produced by the government includes communications from co-conspirators and uncharged third parties, as well as financial information belonging to others.  While this information did not meet the high threshold for an official sensitive designation, any one of those individuals would certainly consider it sensitive within the common meaning of the word and would not expect it to be broadcast to the world.  Moreover, the government has also offered to defense counsel—repeatedly—that it will consider and agree to carve out from the Protective Order specific materials that carry no sensitivity or law enforcement interest preventing their disclosure if defense counsel first

1  identifies them. Yet, to date, defense counsel has not identified a single document that he wishes to use
2  to advocate for a prisoner swap.

3  Under the defense's proposed amendments, nothing would preclude the defense from publishing
4  the full body of discovery online or sharing with the Russian government directly. The government
5  appreciates defense counsel's representation that he "has no intention of posting all of discovery online
6  just to prove a point." Dkt. No. 59 at 10. Yet, defense counsel's assurances on this point indicate a
7  recognition that protection against such public disclosure is appropriate. However, the needed
8  protections for the discovery should be set out in a Protective Order, not dependent on defense counsel's
9  current personal practices. Furthermore, as explained further below, defense counsel's gratuitous
10 attachment of a law enforcement report to his filing—a document with no substantive bearing on the
11 motion—highlights the pitfalls of relying on defense counsel's self-imposed discretion.

**B.    Vinnik's Characterization of the Protective Order's Restrictions Is Exaggerated and Misleading**

Vinnik argues that the Protective Order should be discarded because it is not the norm in this district and is the equivalent of a gag order that serves no practicable or justifiable purpose. *See* Mot., Dkt. No. 59 at 2, 3, 10-13. Vinnik's arguments dramatically overstate the actual restrictions of the Protective Order, which is a far cry from a gag order and simply incorporates a commonsense restriction appearing in numerous other Protective Orders for complex cases.

First, Vinnik characterizes the Protective Order as an aberration and compares it to the model protective orders posted on the Court's website. Mot. at 8 (stating that "[n]either of these restrictions are customary in this district or included in the model protective orders posted on the Court's website."). This is untrue. Courts in this district have repeatedly executed protective orders with similar or identical language. *See, e.g., U.S. v. Karlsson,* 3:19-cr-340-CRB, Dkt. No. 37 at 3[4]; *U.S. v. Ryan Mark Ginster*, 3:22-cr-00374-JSC, Dkt. No. 13[5]; *U.S. v. Kimberly Dominguez and Erick Dominguez*, 19-cr-591-HSG,

---

[4] "IT IS FURTHER ORDERED that no member of the Defense Team shall provide any discovery material produced by the government—whether or not the material constitutes or contains Protected Information within the meaning of this Order—to any third party (i.e., any person who is not a member of the defense team) or make any public disclosure of the same, other than in a court filing, without the government's express written permission or further order of this Court.")

[5] "IT IS FURTHER ORDERED that neither a defendant nor any member of the defense team

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI
7

Dkt. 13 (same language); *U.S. v. John Francis Porter*, 3:22-cr-00270-WHO, Dkt. No. 58 (same language); *U.S. v. Manish Lachwani*, 3:21-cr-00353-CRB, Dkt. 27 (same language); *U.S. v. Thomas Henderson et al.*, No. 19-cr-00376-RS (same language); *U.S. v Nashatka and Gunton*, 3:19-cr-00372-EMC, Dkt. No. 6 at 3 (same language).  "[L]itigants and the courts assume that the sole purpose of discovery is to assist trial preparation," which is "why parties regularly agree, and courts often order, that discovery information will remain private." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986). *Accord Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1316 (11th Cir. 2001); *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013).

Moreover, with respect to the model protective orders posted on the Court's website, only one of those pertains to criminal cases, and it is specifically designated for "Non-Complex Criminal Cases." *See* https://www.cand.uscourts.gov/forms/model-protective-orders/.  As noted above, this is a complex criminal case, so that model order is not applicable.  Further, the court website specifically states that "[t]he Local Rules do not require the parties to use any of the model protective orders and counsel may stipulate to or move for another form of protective order." *Id.*  Moreover, the model protective order for criminal cases, aptly titled "Model Protective Order for Non-Complex Criminal Cases," has a clear disclaimer on page one of the order, which states, in relevant part, as follows: "This sample Protective Order ("Order") is not intended to cover every situation . . . [t]hose situations, *among others, may require more robust protections than are contained in this sample Order.  The Court and the parties should tailor any proposed protective order to suit the needs of a particular case.*" *Id.* n.1 (emphasis added).

Second, Vinnik attacks the protective order as imposing an "unjustified" and "extraordinary" level of secrecy over the discovery in this case. *See* Mot. at 10, 13.  Vinnik claims that the Protective Order is so restrictive that it prevents him or his team from commenting publicly or talking to his priest or family about the case. *Id.*  Although he places significant emphasis on his inability to speak with his

---

shall provide any discovery material produced by the government—whether or not the material constitutes or contains Protected Information within the meaning of this Order—to any third party (i.e., any person who is not a member of the defense team) or make any public disclosure of the same, other than in a court filing, without the government's express written permission or further order of this Court."

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

priest, it is unclear how exactly he is prevented from seeking religious support or what relevance his priest has to discovery materials. Does he wish to show his priest an investigative report from a federal law enforcement agency? If so, for what purpose? Vinnik is free to talk about his involvement in the case and the allegations against him all he wants. Indeed, he can even transfer the discovery itself to officials at the United States Department of State. *See* Dkt. No. 39. He can also file discovery materials on the docket insofar as necessary to defend the charges against him. What he cannot do is disclose or publish discovery documents for a purpose outside the defense of his case or in connection with other proceedings or transfer them to Russian officials or the media.

Third, Vinnik criticizes the government for its press releases in connection with the indictment and extradition in this case. *See* Mot. at 12. However, the government's statements in those releases were limited to the allegations in the charging documents. The government did not attach discovery materials to the release or otherwise disclose any information not existing in the public domain. Vinnik is entitled to make the very same communications with the press and public if based on materials in the public record. Accordingly, Vinnik's characterization of what he essentially argues is a double standard is simply not true.

### C.    There is Good Cause for the Existing Terms of the Protective Order

Vinnik claims that because a majority of the discovery materials have not been designated as "Sensitive Information," no harm could come from their public disclosure, asserting that "these voluminous materials may be filed on the public docket in this case without sealing under the terms of the existing protective order." Mot. at 10 (referencing, among other things, law enforcement reports, search warrant materials, evidence of blockchain transactions that are already public, and articles from the news media). To prove his point, defense counsel attached an HSI report of investigation to highlight the possibility of publicizing documents through court filings, notwithstanding their otherwise irrelevance to any issue. *See* Dkt. No. 60-8 (Exhibit H in Support to Declaration of David Rizk). This argument fails on several fronts.

First, simply because certain documents have not been designated as "sensitive" does not make them suitable for public consumption. Many of the discovery materials contain information that could

fairly be characterized as sensitive, but the government has taken a very conservative approach in its designation in order to facilitate Vinnik's access to the discovery materials while in custody. Government counsel made this intent abundantly clear to defense counsel on several occasions, so it is disingenuous for him to now claim that those materials deserve no care whatsoever.

Second, with respect to the discovery materials that already exist in the public domain, Vinnik may refer to those without restriction. *See* Mot. at 10 (arguing that "evidence of blockchain transactions that are already public, and even articles from the news media" have "no conceivable sensitivity or confidentiality that should attach to it.").

Third, real harm could result from public disclosure of much of the discovery. In his motion, Vinnik states that he was the target of an assassination effort. Mot. at 4. Particularly with respect to investigative reports detailing Vinnik's, his co-conspirators' and others' activities, and communications between numerous parties, many people could in fact be at risk—including Vinnik himself—if information were inappropriately disclosed outside of the defense team. After all, as the Superseding Indictment alleges, BTC-e, through the efforts of Vinnik and his co-conspirators, was one of the primary ways by which criminals around the world—including cyber criminals, computer hackers, ransomware actors, fraudsters, corrupt public officials, and narcotics distribution rings—transferred, laundered, and stored the criminal proceeds of their illegal activities, in the billions of dollars. *See* Superseding Indictment ¶¶ 1-5.

### D. Advocating for a Prisoner Swap Is Not Part of the "Defense of This Case" Within the Meaning of the Protective Order

Nothing about the Protective Order prevents defense counsel from advocating for a prisoner swap. Indeed, defense counsel discusses his efforts on this front in his motion. *See* Mot. at 5-6. However, advocating for a prisoner swap is not within the purview of "the defense of this case" for purposes of the Protective Order. *See* Dkt. No. 29 ¶ 2 ("All materials provided by the United States *in preparation for*, or *in connection with*, any stage of *this case* . . . may be used by the defendant and defense counsel *solely in connection with* <u>the defense of this case</u> *and for no other purpose* and in connection with no other proceeding . . . .") (Emphasis added.) Dissemination of the discovery

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

10

materials to the Russian government, or to the press, would not relate to the defense of this case and would therefore be a violation of the Protective Order.

Vinnik has been charged in a 21-count indictment with a series of criminal offenses. Criminal cases involve a variety of filings and hearings (e.g., suppression hearings, detention hearings, changes of plea, pretrial hearings, trial, sentencing hearings, etc.). Prisoner swaps are not common, and are tangential and not part of "any stage of this case" or the "defense of this case" itself. Accordingly, Vinnik's attempts to frame prisoner swap negotiations as forming part of the criminal proceedings, through which use of criminal discovery materials should be equally applicable and accessible, should be summarily rejected.

### E. The Public Does Not Have a Right to Access to the Discovery Materials

Vinnik incorrectly argues that there is a constitutional and common right of access to the discovery produced by the government in this case. Mot. at 9. The Supreme Court has long held that there is no common law or First Amendment public right of access to discovery information. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 36 (1984). The qualified First Amendment right of access to judicial proceedings and documents simply does not extend to discovery materials. *Id.* at 37. There is no general right of access to information that a government official knows, but has not released to the public. *See United States v. Blagojevich*, 612 F.3d 558, 562 (7th Cir. 2010); *L.A. Police Dep't v. United Reported Publ'g Co.*, 528 U.S. 32, 40, (1999) (no First Amendment right to names and addresses of arrested individuals); *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978) (no First Amendment right to enter a county jail, interview inmates, and take pictures)).

Materials from criminal investigations are not "judicial records under federal law, the public has no presumptive right of access to them." *United States v. Loughner*, 807 F. Supp. 2d 828, 834 (D. Ariz. 2011); *see also Rhinehart*, 467 U.S. at 33 ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *Kravetz*, 706 F.3d at 54 ("With respect to experience, there is no tradition of access to criminal discovery. To the contrary, '[d]iscovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation.'"); *Anderson*, 799 F.2d at

1441 ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation."). Vinnik's attempt to invoke the First Amendment is overstated and meritless.

Furthermore, filing discovery materials on the public docket does not automatically trigger a right of public access. Vinnik's argument that he can publicly file on the docket any discovery materials not designated as sensitive ignores the requirement that that filings on the criminal docket must be relevant to issues in the criminal case and are intended to adjudicate live issues. *See United States v. Carpenter*, No. 2:14-cr-309-GEB, 2018 U.S. Dist. LEXIS 132024, *2 (E.D.Cal. Aug. 6, 2018) (*citing United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the [common law] right of public access. . . . [T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document [subject to the common law public access doctrine]"). The discovery materials at issue here are not judicial records at all—they are materials exchanged from the government to the defense and do not go through the Court in the discovery production process. That the Protective Order does not restrict the defense from using discovery in support of active issues in litigation brought before the Court merely highlights the reasonableness of the provision at issue. The Court's docket is not a pass-through system for a defendant to sidestep the Protective Order's terms on a technicality, the defense's most recent filing notwithstanding.

Furthermore, public interest in Vinnik's criminal case does not generate a right of access to all discovery materials. *See Amodeo*, 71 F.3d at 1050. Indeed, no public right of access exists with respect to materials produced during the initial stages of discovery. *Id.* While a presumption of public access exists as to documents filed with the court, "documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach and stand on a different footing than a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions." *Id.* (internal quotations, citations, and alteration omitted).

### F. Vinnik Has No Standing to Bring First Amendment or Common Law Right of Access Claims

Even if Vinnik could theoretically overcome the fact that there is legally no right of access to the nonpublic discovery materials at issue and the other points set forth above, Vinnik's argument fails because he has no standing to bring a First Amendment or common law right of access claim. The standing question here is not whether Vinnik suffered an "injury in fact" sufficient to make his claim a live case or controversy. Rather, the inquiry is a prudential question of third-party standing: whether Vinnik is a proper proponent of any common law or First Amendment right of access to court filings when his right to access to the documents derives from the Sixth Amendment. "[A] litigant must assert his or her own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991); *see also IMS Health, Inc. v. Ayotte,* 550 F.3d 42, 49 (1st Cir. 2008) ("A party ordinarily has no standing to assert the First Amendment rights of third parties.") (quotation marks omitted). Under this rule, a litigant can only bring an action on behalf of a third party where three criteria are met: "The litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 410–11 (internal quotations and citations omitted).

Assuming, *arguendo*, that a third party has suffered a constitutional injury—an assumption without any support in the record—the other criteria are not met. First, because Vinnik is protected by a different right than the public, the relationship between Vinnik and a third party is not such that Vinnik will be an equally strong proponent of the right of access. *See Singleton v. Wulff*, 428 U.S. 106, 115 (1976). Second, there is no impediment to the members of the public or media asserting a right of access to the materials at issue. *See id*.

Importantly, although the right of access to court documents attaches to the press and public at large, this right does not attach to Vinnik because he is not a member of the public whose only interest in the litigation is access to court documents. *Cf. United States v. Hickey*, 185 F.3d 1064, 1066 (9th Cir. 1999) ("The government, however, lacks third-party standing to assert this right [to access] on behalf of the public in this case. The government is the prosecutor, not a third party whose sole interest in the

U.S. OPPOSITION TO DEFENDANT ALEXANDER VINNIK'S MOTION TO AMEND PROTECTIVE ORDER
CR 16-00227 SI

13

litigation is access to documents.") Therefore, Vinnik is not the proper proponent of these rights because he is protected by the Sixth Amendment right to a public trial; to the extent the First Amendment or common law provides a right to court documents, that right should only be asserted by the public or media. *See Singleton*, 428 U.S. at 114 ("[T]hird parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them.") Therefore, Vinnik lacks standing to raise a First Amendment or common law right of access to discovery, and his motion should be dismissed.

## CONCLUSION

There is good cause for the Protective Order in this case. The discovery materials provided to the defense include information tied to other cases and investigations and include other people's communications and financial information that, although not explicitly designated as "sensitive," do not belong in the hands of the public or individuals with no direct bearing on the legal case before this Court. Vinnik has a detailed charging document as well as his own knowledge about the facts and his conduct that he is free to share with the world. For these and the other reasons set forth above, Vinnik's motion lacks merit and should be denied by the Court.

DATED: May 26, 2023                                   Respectfully submitted,

                                                      ISMAIL J. RAMSEY
                                                      United States Attorney


                                                       /s/
                                                      CLAUDIA QUIROZ
                                                      KATHERINE LLOYD-LOVETT
                                                      Assistant United States Attorneys
                                                      C. ALDEN PELKER
                                                      Trial Attorney, CCIPS
                                                      Assistant United States Attorney