JODI LINKER
Federal Public Defender
DAVID W. RIZK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    415.436.7700
Facsimile:    415.436.7706
David_Rizk@fd.org

Counsel for Defendant VINNIK

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 16-CR-00227 SI |
| Plaintiff, | **DEFENDANT'S REPLY BRIEF** |
| v. | |
| ALEXANDER VINNIK, | |
| Defendant. | |

## I.   INTRODUCTION

Defendant Alexander Vinnik submits this reply brief to respond to arguments raised in the prosecution's opposition brief. Generally, the government's response fails to confront with the real issues in dispute that are presented in the motion.

First, the government's filing does not identify any "good cause" in the form of *specific harm* that would arise from the disclosure of any particular category of documents in discovery not deemed "Sensitive." The Ninth Circuit's case law, cited by the government, requires just that. Although the government argues generally that this is a "complex case," there is no such recognized exception in this Circuit, and even the sole case it cites does not support the notion that the government may forever rely on generalized arguments without any specificity to avoid its obligation under Rule 16(d) to articulate "good cause." Alternatively, the government invokes various straw-men arguments concerning financial information and threats to Mr. Vinnik's safety, none of which is at issue here. And while it quibbles with the defense's contention of what the norm is in this district and cites various stipulated protective orders, counter examples are readily available, and ultimately, uncontested stipulations are of no persuasive or authoritative value. At bottom, the government is unable to cite a *single judicial decision* in this district or any jurisdiction that supports the overbroad restrictions it seeks to have imposed over specific objections like those raised here. In a final straw, the government tries to turn Rule 16(d) on its head by suggesting that the defense should bear the burden of identifying which documents may be disclosed, and then seeking the government's approval; doing so would violate the Rule and intrude on the constitutionally-protected confidentiality that is core to the defense function.

Second, it accuses the defense of "exaggerating" the protective order's restrictions. The defense has done no such thing. The restrictions are apparent from the face of the protective order and were not misstated by the defense. The record now further reflects that the government itself interprets the relevant terms extremely broadly. Although the government clearly does not understand how or why, the defense is unable to perform its traditional and essential function on a practical level if it cannot disclose any information whatsoever from discovery to those who are close to the defendant, such as

his mother and priest, as well as other third parties that may have access to evidence, such as the Russian government.

Third, the government entirely fails to acknowledge or contend with the main premise of the defense's position, that advocating for a swap publicly *is* defending the case—because an exchange of prisoners would end this case and preclude a sentence. The United States offers no answer whatsoever to that point. However, because the government cannot possibly meet its burden under Rule 16(d), the Court need not reach this interpretive issue. It should just strike the restriction that all discovery must be used only "in defense of this case."

Lastly, the government's briefing confirms that it what it ultimately seeks here is an unusual degree of secrecy. It acknowledges, by its silence, that Mr. Vinnik's case is a matter of public interest, which is indisputable. The prosecution then argues that the public has no constitutional or common law right of access to discovery, and that Mr. Vinnik lacks First Amendment standing. Here again, it entirely misses the point. As many cases have held, including those cited by the government, both the public's constitutional and common-law interests and Mr. Vinnik's own right to speak are important considerations when assessing "good cause." What the defense seeks is not in fact public access to all discovery, it is the practical ability to fairly defend Mr. Vinnik's legal interests against this prosecution or any sentence.

## II.    ARGUMENT

### A.  There is no good cause because the government cannot identify any particular harm that would result, absent the restrictions; its alternative arguments lack merit.

Even under the very case law cited by the government, the law is quite clear that under Rule 16(d) (like its civil counterpart Rule 26) "good cause" is required for restrictions contained in a protective order, and that "good cause" means a finding that particularized harm would result absent the restrictions due to disclosures. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130-31 (9th Cir. 2003) ("A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." (citing cases)); *see also In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y.

2006) ("Ordinarily, good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" (citing cases)).

*Foltz*, also cited by the government, directly contradicts the position it seeks to advance there. The *Folz* Court, articulates the same "good cause" standard that applies under the Civil Rules as follows: "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Folz,* 331 F.3d at 1130 (citing *Phillips v. Gen. Motors*, 307 F.3d 1206, 1212 (9th Cir. 2002)). *Folz* is consistent with a long line of Circuit precedents and other lower court cases that it cites with approval, requiring the same exacting showing. *See, e.g., Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992) ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."); *San Jose Mercury News v. U.S. District Court,* 187 F.3d 1096, 1102-03 (9th Cir. 1999); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 264-66 (9th Cir. 1964); *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

In *Folz* in particular, "the district court issued a blanket protective order, forbidding both parties to disclose any information produced in discovery absent permission from the other party or from the district court." *Id.* at 1131. "Under the blanket protective order, however, the district court never required [the proponent of the restrictions] to show that specific discovery documents, whether eventually filed with the court or not, contained such information." *Id.* On appellate review, the proponent of the protective order still had not shown "specific harm or prejudice that it expects will arise from disclosure of any particular documents produced in discovery, as required by *Beckman.*" The Circuit reversed, found an abuse of discretion, and directed the district court on remand: "the district court must require [the proponents of the restriction] to make an actual showing of good cause for their continuing protection ...." *Id.* (citing *Phillips*, 307 F.3d at 1212). There is thus no real question what the legal standard here requires.

Instead of meeting this standard, the government first seeks to characterize this case as so "complex" that no particularized showing is necessary, relying on the September 11th Multi-District Litigation (MDL) case. The defense is not aware of any Ninth Circuit case law that carves out an exception for "complex" cases, but in any event, the September 11th case is not remotely helpful to the government even on its own terms. As an initial matter, as substantial as this case is, it does not come close to resembling the September 11th MDL. As the September 11th court went on to explain specifically: "the present circumstances are far from normal. Indeed, this multi-district litigation amounts to *one of the largest private lawsuits in United States history*." *Id.* at 223 (emphasis added). In that limited circumstance, it is true that the September 11th court was willing to accept on a provision basis, "such broad assertions of good cause [that] would [otherwise] be too generalized to support imposition of a protective order." *Id.* at 223.[1]

But that was not all; the September 11th case does not support the notion that the proponent of restrictions in a complex case should never be required to demonstrate "good cause." To the contrary, and as the September 11th court was quite careful to point out:

> In cases of unusual scope and complexity, however, broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause. *See In re Agent Orange [Prod. Liab. Litig.],* 821 F.2d [139,] at 148 [(2d Cir. 1987)]. Instead, a court may impose an initial protective order based upon a general showing of good cause, *and may modify that order at a later time if more specific grounds for its continuance remain indiscernible. Id.* (explaining that although the district court made no finding of good cause, the court "properly entered the [protective] orders initially as temporary measures, and properly lifted them thereafter").

*Id.* at 222 (emphasis added). At a minimum, even if there were a "complex case" exception in the Ninth Circuit, this latter stage is where we are now in the present proceedings. The defense requested the discovery and agreed to a provisional protective order, subject to clearly stated objections, in an effort to obtain timely discovery so the defense could move the case forward and evaluate the need for any restrictions. Now, the defense has moved to modify the conditions because there is no apparent basis

---

[1] Notably, the Defendants' Committee's "generalized" claims, resembling the government's here, were that "'[a] substantial portion of those documents may contain sensitive or confidential information, such as details about defendants' finances, the public disclosure of which would intrude on defendants' privacy." *Id*.

*U.S. v. Vinnik*, Case No. 16-CR-00227 SI
REPLY BRIEF                                    5

for a particularized finding of "good cause." Respectfully, here, the Court should follow the September 11th court's guidance and modify the protective order since it has become clear that "more specific grounds for its continuance remain indiscernible." *Id.*

It is abundantly clear that there are no specific grounds identified in the government's opposition brief. The government points to "the large volume of records, including detailed financial records tied to Vinnik and others, various communications, and records tied to multiple law enforcement investigations." Gov't Opp. at 5. Notably, its motion fails to identify a single document or even a specific, identifiable category of documents that are not sensitive but still purportedly deserve substantial restrictions under the protective order. Its failure to do so unequivocally fails the test repeatedly articulated by the Circuit in *Folz*, *Beckman*, *Phillips*, etc.

Furthermore, the suggestion that the restrictions here covering all discovery are necessary to protect "financial records" is an obvious red-herring. The existing protecting order already expressly covers financial information and subjects it to protective measures. *See* Dkt No. 29 at 3 (defining "Sensitive Information" as including "Financial Identifying Information…"). Likewise, the government argues that the protective order "is necessary and appropriate, insofar as it protects the unnecessary publication of information pertaining to uncharged third-parties, co-conspirators, and potential witnesses." *Id.* at 5. This is also a red-herring. Again, the protective agreement already covers it. *Id.* (defining "Sensitive Information" as including "Personal Identifying Information of any individual…"). The same is true for law enforcement surveillance materials that would reveal truly sensitive investigatory techniques or law enforcement targets—already covered. *Id.* (defining "Sensitive Information" as including "Information that could reveal sensitive sources, techniques, information, or methods…" and "Information regarding the existence and/or identities of other targets of the investigation"). The defense has already offered to stipulate that all such properly designated materials should be protected and sealed, consistent with routine practice. None of that is actually at issue here; what is at issue here is discovery that indisputably *does not* entail any such sensitivities.

At bottom, part of the government's objection seems to its resistance to the burden of specifically

designating sensitive materials—although, for obvious reasons, it stops short of coming out and saying it. To state the obvious, from the defense perspective, the suggestion from the United States of America (the most powerful and resource-rich litigant in the world) that it would be too burdensome to participate in the legally-required process of designating sensitive information and segregating it from non-sensitive information, is not well-taken. That is particularly true in the context of this case, where the defense in good faith agreed to the protective order (subject to objection) to facilitate prompt production of discovery—which then the United States did not follow through on, necessitating a request from the defense for a discovery deadline from the Court.

The case law cited by the government, again, does not support its position that all discovery should therefore be restricted from disclosure to any third party because redaction is burdensome. The government relies on an unreported out-of-district case, *United States v. Fraijo*, No. 20-CR-00248, 2022 WL 1018385, at *1 (D. Az. Apr. 5, 2022). That case permitted a protective order to cover the contents of a single cell phone—not all discovery in the case. The government in that matter argued that "the cellphone metadata is voluminous making redaction impractical." *Id.* at *1. No objection is noted in the opinion from the defense, and the Court accepted the government's position and imposed a protective order that covered the cell phone's contents. Here, the defense would generally agree to similar restrictions for voluminous materials that are impractical to redact. In fact, the government has already designated the digital devices (cell phones, laptop computers) that it seized when it arrested Mr. Vinnik as "Sensitive" under the protective order—and that designation is not subject to dispute in this motion. The bottom line remains, however, that Rule 16(d) obligates the government must designate such materials for demonstrated "good cause." The fact that some subsets of discovery may include materials that present practical difficulties simply does *not* authorize the wholesale restriction of all discovery in the case regardless of its contents.

Alternatively, the government contends that it has been "conservative and judicious in its designation of materials as sensitive in order to facilitate Vinnik's review of the discovery materials while he is in custody," and suggests that it relied on the protective order "during the process of

assigning sensitive categorizations to the materials." Gov't Opp. at 6 (citing *Folz*, 331 F.3d at 1137-38). To begin, it should go without saying that the government should always act judiciously when designating materials as sensitive under a protective order. That is a baseline expectation in every case, and here the protective order requires the government to "exercise reasonable care" in making designations. Dkt. No. 29 at 3. Protective orders are not weapons used to prevent detained defendants from reviewing discovery. The designations implemented by the government to date do not reflect leniency; they reflect a judgment that the defendant can and should have access to the vast majority of discovery (excepting only seized devices and some limited financial records) without posing any threat of harm.

As to the government's purported "reliance" on the protective order in producing documents and making designations, that suggestion is illusory as a factual matter and, again, flatly at odds with the very case law the government misleadingly cites, namely *Folz*. First, the correspondence between the parties makes it abundantly clear that the defense objected to the challenged restrictions and the government was fully on notice that it might have to redesignate materials if the protective model were amended. Indeed, the current protective order itself specifically contemplates challenges to designations as well as modifications. *See* Dkt. No. 29 at 5. Second, the reality is that the government has only designated two general categories of discovery as "Sensitive" under the protective order: devices seized at the time of Mr. Vinnik's arrest, and certain financial information disclosed in connection with Mr. Vinnik's eligibility for court-appointed counsel. Third, and lastly, *Folz* is directly contrary to the government's urging of its reliance interest. There, the proponent of the restrictions (State Farm) argued it had relied upon a blanket protective order like the one here to make various productions. The Circuit resoundingly rejected that position:

> As noted above, "[r]eliance will be less with a blanket [protective] order, because it is by nature overinclusive." *Beckman*, 966 F.2d at 476. Because State Farm obtained the blanket protective order without making a particularized showing of good cause with respect to any individual document, it could not reasonably rely on the order to hold these records under seal forever. *See San Jose Mercury News*, 187 F.3d at 1103; *Olympic Refining*, 332 F.2d at 264-66, *cited with approval in Beckman*, 966 F.2d at 475-76. Thus, State Farm's reliance interest fails to offer a compelling reason to overcome the presumption in favor of access, and State Farm offers no other.

*Folz*, 331 F.3d at 1138.

Finally, the government's suggestion to turn Rule 16(d) on its head by obligating the defense to identify documents it wishes to disclose to third parties or otherwise use to defend Mr. Vinnik's legal interests and seek government approval, invites reversal given the law outlined above and the contours of the constitutionally-protected defense function. The government similarly complains about the defense's proposed amendments to the protective order, but seemingly forgets that it is the *government's* burden to identify and justify restrictions for "good cause." That it has not done.

### B. The defense did not misstate the restrictions at issue or any other matter.

The protective order's broad scope is apparent from the face of the document. The defense has not exaggerated or misstated any part of it. The defense also did not use the term "gag order," but the government does. Gov't Opp. at 7. A "gag order" is an order directed at defense counsel or the defendant (or another party) precluding them from making public comments about a case. Here, the motion argued that "Mr. Vinnik and the defense are unilaterally gagged by the protective order for no discernible reason," because unlike the government, it precludes them from publicly discussing *any evidence* in the case whatsoever, irrespective of its sensitivity. Def's Mot. at 3. That was no misstatement. It is exactly what the protective order says and what the government is advocating. Similarly, the government similarly claims—in a footnote and without explanation—that Vinnik makes a "series of misstatements about the government's activities and the state of the French proceedings." Gov't Opp. at 1 at fn.1. The government purports to dispute "those characterizations" and claims they are "entirely irrelevant," but again does not explain. *Id.* Such accusations short of substance should be disregarded.

As to scope, one very important point is worth clarifying at the outset: the government's interpretation of the restrictions is extremely broad. As the defense previously explained in the parties' meet and confer discussion, defense counsel is concerned that the protective order arguably covers and precludes not just the disclosure of all *documents* produced by the government to any third parties, but also the disclosure of any *information* within any document in discovery. The government endorsed

that view at the time, however, now its opposition brief refers only to the disclosure of documents and materials, rather than the information itself. Again, to be clear, the defense has no present need to, or intention of, publicly disclosing documents or materials from discovery to third-parties who are not witnesses. But the protective order, at least as the government seems to construe it, also covers literally all information produced in discovery. If the government were to foreswear that interpretation, doing so would satisfy the defense. But it will not; instead, its indefensible position is that all information in discovery, regardless of whether it is sensitive or not, cannot be disclosed to any third party without prior approval from the government or the Court.

In an effort to justify that extreme position, the government contends that courts have approved similar restrictions in seven other cases arising in this district. Defense counsel, of course, was not party to the reasons and rationales (if any) discussed by the parties in those other cases and the government offers nothing on that score, so it is impossible to assess them for "good cause" under Rule 16(d). For what it is worth, the defense is also quite capable of citing cases from this district, apparently involving far greater sensitivities in the realm of terrorism and national security, where no restriction of the kind challenged here was requested by the government or approved by a court. *See, e.g., United States v. Shafi*, No. 15-CR-582 WHO, Dkt. No. 42 (protective order only placing restrictions on limited designated discovery related to electronic surveillance materials collected pursuant to Foreign Intelligence Surveillance Act in a prosecution of terrorism material support charges); *United States v. Chen Song*, No. 21-CR-00011 WHA, Dkt. No. 50 (protective order placing restrictions on limited discovery constituting sensitive personally identifying, financial, and medical information in case alleging Chinese physician lied to the United States concerning her secret membership in the Chinese military forces in an apparent effort to steal research from Stanford University). More significantly, not a single case cited by the government was subject to a defense objection or litigation, and thus none of those stipulations has any persuasive, let alone precedential, value. Indeed, tellingly, the government is unable to cite to a *single* judicial decision in any jurisdiction where a court at any level has upheld a restriction of the kind challenged here in the face of an objection under Rule 16(d). The case law cited

*U.S. v. Vinnik*, Case No. 16-CR-00227 SI
REPLY BRIEF                                                   10

above, including *Folz*, *Beckman*, *Phillips*, and *San Jose Mercury News*, shows exactly why doing so would entail a very formidable and particularized showing.

The government's myopia as to the necessity of disclosing information to third parties also reflects a poor understanding of the defense function. It is simply not true, as the government claims, that the protective order "affords the defense broad latitude" and that "the only restriction on the vast majority of the documents … is that they must be used in the defense of the criminal case and cannot be shared with people who are not involved in the defense of the criminal case," Gov't Opp. at 5 (italics omitted). In fact, the latter restriction extends to any and all third parties who are not witnesses, not just "people who are not involved in the defense of the criminal case," whatever that vague term may mean. It may come as a surprise to the government that a criminal defendant's family and/or spiritual advisors are often involved in criminal cases. Indeed, it is utterly routine for defendants to ask their counsel to help explain to those around them what they are facing. There it is nothing sinister or harmful about it, and for the defense to be precluded from doing so without any proffered justification from the government is indefensible.

**C.  Advocating for a prisoner swap is "defense of this case."**

Putting aside the fact that the government has not come even close to justifying the restrictions in the protective order under Rule 16(d)'s "good cause" standard, the Department of Justice's view that advocating for an exchange of prisoners does not qualify as "defense of this case" is self-serving and totally unexplained by the government's opposition brief. The fact is, a trade would result in dismissal of this case at the direction of the President and preclude further proceedings, any conviction, and any sentence for Mr. Vinnik. It is hard to imagine any greater direct impact that would qualify as "defense of this case." The government disagrees but fails to provide any rationale beyond the superficial observation that a prisoner exchange does not occur within the ambit of judicial proceedings (absent a notice of dismissal, which would be filed before this Court).

Defense counsel has a duty to "be knowledgeable about, and consider, alternatives to prosecution or conviction that may be applicable in individual cases, and communicate them to the

*U.S. v. Vinnik*, Case No. 16-CR-00227 SI
REPLY BRIEF                                                    11

client." ABA Standards for Criminal Justice 4-1.2(f) (4th ed. 2017). Here, those alternatives may include a prisoner swap, which could result in Mr. Vinnik's immediate freedom. And it is ultimately Mr. Vinnik—not the government, the court, or even his appointed counsel—who determines the objectives of his defense. *See* Cal. R. of Prof. Conduct 1.2 ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation[.]"). Those objectives sometimes include advocacy in tangential proceedings. *Cf. Samayoa v. Davis*, 928 F.3d 1127, 1128 (9th Cir. 2019) (approving appointed federal counsel's advocacy for habeas client in state clemency proceedings).

Finally, and as set forth in the defense's moving papers, defense counsel has been informed by others who have successfully advocated for such swaps that public advocacy is important. Thus, the Court's prior order authorizing the defense to share information from discovery with the State Department does not adequately address the request from Mr. Vinnik or take into account his right to speak about this case in the service of obtaining a favorable outcome.

That said, because the government has not come close to supporting the restriction limiting Mr. Vinnik's use of discovery, the Court need not rule on this issue concerning the interpretation of "the defense of this case." Instead, it should just strike the term altogether because the government plainly failed to carry its burden under Rule 16(d).

### D. The public's interest in disclosure and Mr. Vinnik's constitutional rights are relevant to the analysis under Rule 16(d).

The government misunderstands and miscasts the defense's citation to cases recognizing the public's interest and First Amendment implications of protective orders. The defense is not taking the position that the public has an unqualified statutory or common law or Constitutional right to all documents within discovery. The point, rather, is that they are relevant to the analysis under Rule 16(d).

The case law does teach that certain classes of judicial records—here included within discovery—are subject to such rights of access. In particular, documents filed with the courts as well as certain types of judicial records such as search warrant applications are subject to strong presumptions of public access. As *Folz* explains: "In this circuit, we start with a strong presumption in favor of access to court records." 331 F. 3d at 1135. That is true for civil cases as well as criminal matters. *Id.* (citing

*United States v. Edwards*, 672 F.2d 1289, 1294 (7th Cir. 1982) (same in context of criminal trial) and *United States v. Criden*, 648 F.2d 814, 823 (3d Cir. 1981) (same)). A limited exception to this general rule applies when a document has been sealed pursuant to a valid protective order that is supported by "good cause" under the Rules. *Id.* at 1135. These principles are relevant here because the current blanket protective order is shielding such judicial records from public access without any discernible justification and contrary to the policy of the law. That is a problem because "*courts [] must be mindful that protective orders implicate a litigant's First Amendment right to speak, as well as the public's common law and 'likely constitutional' right of access to the courts.*" *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d at 221 (emphasis added) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) and *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004)). Indeed, the September 11th court concluded that the Rules requiring a showing of "good cause" "accommodates these important rights by requiring the party or person seeking a protective order to demonstrate good cause for its issuance." *Id.* (citing cases).

Thus, consideration of the public's interests and Mr. Vinnik's own legal interests do figure into the analysis under Rule 16(d), and here they weigh heavily in favor of less restrictive protective order terms. As set forth above, they certainly have not been outweighed by any showing made by the government.

### III.    CONCLUSION

For all the reasons set forth herein, Mr. Vinnik respectfully requests that his motion to amend the protective order be granted.

//

//

//

*U.S. v. Vinnik*, Case No. 16-CR-00227 SI
REPLY BRIEF                                                                13

1

2    Dated:     May 31, 2023                    Respectfully submitted,

3                                              JODI LINKER
                                               Federal Public Defender
4                                              Northern District of California

5                                                         /S
                                               _____
6                                              DAVID W. RIZK
                                               Assistant Federal Public Defender
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   *U.S. v. Vinnik*, Case No. 16-CR-00227 SI
     REPLY BRIEF                              14
28